Lester L. Bourgeois and his sister, Miss Mercedes M. Bourgeois, the plaintiffs herein, filed suit against N.J. Clesi, Inc., a real estate broker, the United States Fidelity Guaranty Company, the surety on the broker's bond, and Anna A. Burrer, the owner of the property in question, for the return of a deposit of 10% or $1450.00, retained by N.J. Clesi, Inc., in connection with an agreement to purchase from Anna A. Burrer, the property bearing the municipal No. 435 in S. Pierce Street, in the City of New Orleans, for the price of $14,500.00.
The defendants each filed an answer denying that plaintiffs were entitled to the return of the deposit. N.J. Clesi, Inc., further answered and reconvened for the sum of $660.00, which represents the real estate broker's commission, plus a reasonable attorney's fee. Anna A. Burrer, the *Page 428 
owner, reconvened claiming the full amount of the said deposit less a remittitur of $470.00.
The lower court rendered judgment in plaintiffs' favor and against the defendants in solido for the sum of $1450.00, and dismissed both reconventional demands. From this judgment the defendant, N.J. Clesi, Inc., alone prosecutes this appeal.
The record reveals that on December 27th, 1946, the plaintiffs herein, through N.J. Clesi, Inc., signed an offer to purchase the property bearing the municipal number 435 S. Pierce Street, in the City of New Orleans, for the price of $14,500.00, payable $6,000.00 cash and the "balance subject to homestead loan". The phrase "balance subject to homestead loan" was written into the contract in longhand, presumably by the office of defendant, N.J. Clesi, Inc. This stereotyped agreement (which is the standard form of the Real Estate Board of New Orleans, Inc., revised on July 7, 1941) further provides in part as follows:
"This sale is conditioned upon the ability of the purchaser to borrow upon this property as surety the sum of $__________ either by a Homestead loan from any Homestead on the usual Homestead terms, or by a mortgage loan from some other source at a rate of interest not to exceed __________% per annum and for a period not less than __________ years, which loan the purchaser obligated himself to obtain if procurable. Either loan to be secured by purchaser or agent __________ days from acceptance hereof.
* * * * * *
"Act of Sale to be passed before Purchasers, Esq., Notary on or prior to 60 Days 19__, at expense of purchaser.
* * * * * *
"* * * In the event that purchaser fails to comply with this agreement within the time specified, the vendor shall have the right, either to declare the deposit, ipso facto, forfeited, without formality and without placing purchaser in default,time being the essence of this contract; or the vendor may demand specific performance. In the event that the deposit is forfeited, the commission of the agent shall be paid out of this deposit, reserving to the vendor the right to proceed against purchaser for the recovery of the amount of the commission. In the event that the vendor does not comply with this agreement to sell within the time specified, purchaser shall have the right either to demand the return of double the deposit, or specific performance. The commission is earned on the signing of the agreement and shall not be affected by any subsequent agreement of the parties hereto, or by annulment of contract by any court." (Italics ours.)
The offer was accepted on December 27th, 1946, by the owner. The deposit of 10% or $1450.00 was accepted and retained by N.J. Clesi, Inc.
On or about January 16th, 1947, plaintiffs applied to the First Homestead and Savings Association for a loan of $8500.00 on the property in question. On January 23rd, 1947, they were informed by the President of this homestead that the said homestead could not make a loan for this amount. The President stated that he evaluated this property for a loan on the basis of his personal appraisal and also on the basis of a prior appraisal of the Central Appraisal Bureau, which was contained either in his files or the files of the Central Appraisal Bureau, and which revealed the loan value of the property as $3500.00 at the time that this appraisal was made; and that in his opinion the property, for homestead loan purposes, was evaluated at $8500.00, and his homestead would loan, based on this appraisal, from $6800.00 to $7200.00, subject, of course, to a re-appraisal by the Central Appraisal Bureau of $8500.00
Thereafter, on January 28th, 1947, N.J. Clesi, Inc., by and with the consent, cooperation and assistance of the plaintiffs, applied to the Pan American Life Insurance Company for the loan. There is a dispute between plaintiffs and defendants as to the date that the rejection of this loan by the Pan American Life Insurance Company came to the knowledge of plaintiffs. It appears, however, from the record that the Pan American Life Insurance Company's loan agent, H. T. Presser, was notified by the Company on February *Page 429 
14th, 1947, that the said company would not loan in excess of $7000.00 on the property and that he notified Clesi on the same date. Clesi contends that he, in turn, notified the plaintiffs of this fact between February 16th and February 20th, 1947. However, plaintiffs contend that the rejection of their application to Pan American Life Insurance Company for a loan of $8500.00 did not come to their attention until February 26th, 1947. In any event, it appears that after the rejection of this application for a loan of $8500.00 by the Pan American Life Insurance Company, defendant Clesi, apparently on his own initiative, applied to the First National Life Insurance Company for a loan on the property in question and the record reveals that a loan of $8500.00 was granted and same is indicated by virtue of a letter from the First National Life Insurance Company to Clesi, dated February 26th, 1947. In turn, Clesi wrote a letter to the plaintiffs, which is dated March 1st, 1947, and enclosed a copy of the letter from the First National Life Insurance Company, dated February 26th, 1947. It is interesting to note that the envelope in which these letters were contained bears two postmarks — March 1st and March 3rd. Plaintiffs acknowledge receiving the letter on March 3rd, 1947.
There is a dispute between plaintiffs and the defendant, N.J. Clesi, Inc., as to when the granting of this loan by the First National Insurance Company was communicated to the plaintiffs. Clesi, in answer to a question by the Court, stated that between February 22nd and February 25th, 1947, he communicated this information to the plaintiffs. Plaintiffs, on the other hand, maintain that their first knowledge of the granting of this loan came through the medium of the letter referred to hereinabove, written to them by Clesi dated March 1st, 1947, and received by them on March 3rd, 1947.
The record further reveals that on February 27th, 1947, the plaintiffs called at the office of N.J. Clesi, Inc., and demanded the return of the deposit. This was refused and thereafter plaintiffs consulted their attorney, who, on the same day, February 27th, 1947, addressed a letter to N.J. Clesi, Inc., and the owner of the property, Anna A. Burrer, demanding the return of the deposit. Defendant Clesi refused to return the deposit and thereupon plaintiffs filed this suit. Thereafter Clesi deposited in the Registry of the Court the sum in question, to be disposed of in accordance with the final judgment herein.
Plaintiffs contend as follows:
(a) That because of their inability to secure a loan within the sixty days from the date of the acceptance of the offer that they have the right to recede from this agreement;
(b) That the loan offered by the First National Life Insurance Company was not a homestead loan, which they maintain the contract specifically provided for; and
(c) That the loan offered by the First National Life Insurance Company was not made known to them until the sixty days had expired after the date of the offer and acceptance and, therefore, they were not bound legally to accept it.
Defendant, N.J. Clesi, Inc., contends:
"(a) That plaintiffs did not make a sincere and diligent effort to secure the credit portion of the purchase price;
"(b) That the offer of the First National Life Insurance Company to lend the necessary credit portion of the purchase price was conveyed to plaintiffs prior to the expiration of the sixty-day period.
"(c) That the 60-day period given to the buyers to pass the sale is a condition stipulated solely and only for the benefit of the buyers and they cannot avail themselves thereof arbitrarily and without notice to the loss and detriment of the other parties to the contract.
"(d) That, according to the explicit terms of the agreement, the commission of the brokers is earned upon the acceptance of the offer, and the failure of the buyer to secure a loan and the resultant dissolution of the contract does not deprive the brokers of their commission."
In our opinion the only question with which we are concerned is one of fact and that is, whether a homestead loan or any other loan was obtained within sixty days *Page 430 
from December 27th, 1946, the date on which the offer and acceptance was consummated. There is no dispute that the offer to purchase the property was made and accepted. The contract clearly reveals this fact. As pointed out above the contract provides that:
"In the event that purchaser fails to comply with this agreement within the time specified the vendor shall have the right, either to declare the deposit, ipso facto, forfeited, without formality and without placing purchaser in default,time being the essence of this contract; or the vendor may demand specific performance. In the event that the deposit is forfeited, the commission of the agent shall be paid out of this deposit, reserving to the vendor the right to proceed against purchaser for the recovery of the amount of the commission. In the event that the vendor does not comply with this agreement to sell within the time specified, purchaser shall have the right either to demand the return of double the deposit, or specific performance." (Italics ours.)
We, therefore, see that the contract specifically provides that time is of the very essence of this contract.
Civil Code, Article 2058, provides as follows:
"When the contract is to do the act in a certain number of days, or in a certain number of days after the date of the contract, the day of contract is not included in the number of days to be counted, and the obligor has until sunset of the last day of the number enumerated for the performance of his contract, with the exception contained in the last preceding article."
This contract was brought into being on December 27th, 1946, by virtue of plaintiffs' offer to purchase and the owner's acceptance thereof. Therefore, not including December 27th, 1946, in our calculation, the sixty days expired at sunset on February 25th, 1947. Ratcliff v. Louisiana Industrial Life Ins. Co., 185 La. 557, 169 So. 572.
The record reveals that the loan was approved in a letter dated February 26th, 1947, by the First National Life Insurance Company, addressed to N.J. Clesi, Inc., and received by that office on February 27th, 1947, which information was communicated to the plaintiffs through the medium of a letter written to them by Clesi on March 1st, 1947, and received by them on March 3rd, 1947. Clesi maintains that he gave this information to the plaintiffs between February 22nd and February 25th, 1947, but the plaintiffs vehemently deny this and it is our opinion that the first knowledge that they had concerning the fact that a loan from the First National Life Insurance Company had even been applied for, much less approved, was when they received Clesi's letter on March 3rd, 1947. We are, therefore, of the opinion that a loan was not procured within the sixty day period as provided for in this contract. A fortiori it is unnecessary for us to decide in conformity with the alternative contentions of plaintiffs and defendants whether the contract specifically provided for a "homestead loan" as written into the agreement in longhand, or any other type of mortgage loan as per the stereotyped printed terms of the agreement.
Counsel for defendant, N.J. Clesi, Inc., contends that the plaintiffs did not make a sincere and diligent effort to secure the credit portion of the purchase price. We believe they did. Within a reasonable time after the consummation of the offer and acceptance of this contract, plaintiffs called upon the First Savings Homestead Association and attempted to secure a loan for $8500.00. They were informed by the President thereof that he had looked at the property and had evaluated it from his personal observation thereof and from a previous appraisal of the Central Appraisal Bureau, which appraisal indicated that the property had a loan value of only $5500.00, and further, in his opinion, that in no event would his homestead loan more than from $6800.00 to $7200.00 on this property, assuming that it was re-appraised at $8500.00 by the Central Appraisal Bureau.
It is generally well recognized that all homestead within the City of New Orleans are governed by identically the same rules and regulations, to-wit: that they *Page 431 
will lend approximately 80% of the Central Appraisal Bureau's evaluation of residential property. Savich v. Ruiz, La. App., 32 So.2d 415. The President of the said homestead advised plaintiffs of this fact and it would have been a useless gesture for them to have applied to any other homestead with respect to this loan. Plaintiffs, in good faith, requested and obtained the assistance of an employee of the office of N.J. Clesi, Inc., to procure a loan for them from the Pan American Life Insurance Company. This application was also rejected. In our opinion the plaintiffs did make a sincere and diligent effort to secure the credit portion of the purchase price.
Counsel for Clesi further contends that according to the terms of the contract the commission of the broker is earned upon the acceptance of the offer, and the "failure of the buyer to secure a loan and the resultant dissolution of the contract does not deprive the brokers of their commission." We are not in accord with this view. It was through no fault of the plaintiffs that this sale was not consummated for, in our opinion, they diligently and in good faith, attempted to secure a loan for the credit portion of the contract. The record reveals they were unable to do this.
"When a prospective purchaser of property obligated himself to pay the broker's commission on his failure to comply with his offer, and the sale is not consummated but through no fault of the prospective purchaser, he owes no broker's commission."
(Syllabus) Beaucoudray v. Roberts, 8 La. App. 739.
We are, therefore, of the opinion that the plaintiffs are not liable for any part of the broker's commission.
For the reasons assigned the judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 502