126 So.2d 182 (1961)
Cliff GARLETE
v.
Henry E. RODRIGUEZ, Caruso-Goll Realtors, a Partnership, and Victor Clesi Realty, Inc., a Corporation.
No. 35.
Court of Appeal of Louisiana, Fourth Circuit.
January 23, 1961.
*183 Charles E. Cabibi, New Orleans, for Henry E. Rodriguez, defendant-appellant.
Robert J. Zibilich, New Orleans, for Caruso-Goll Realtors and Victor Clesi Realty, Inc., defendants-appellants.
Dorothy D. Wolbrette, New Orleans, for Cliff Garlete, plaintiff-appellee.
YARRUT, Judge.
This suit was transferred here by our Supreme Court under authority of Art. 7 § 29, Louisiana Constitution (as amended by Act 561 of 1958), LSA, and Constitutional Art. 7 § 30 (as amended by Act 593 of 1960), extending the jurisdiction of this Court.
Plaintiff-appellee agreed to purchase an immovable in the French Quarter, New Orleans. Defendants-appellants are the seller and two real estate brokers who confected the agreement. Plaintiff demands the return of $4,400, the deposit he made on account of the purchase price with the brokers. The basis of his claim is that the sale was conditioned upon his being able to obtain a loan from a homestead and building and loan association, which was not obtainable; hence, the agreement became null, void and unenforceable.
The defendant-vendor reconvened for specific performance and attorney's fees. The two defendant-brokers reconvened for $1,100 each, being one-half of the total sale's commission of $2,200, plus $300 attorney's fees. There was judgment in favor of plaintiff decreeing the agreement to be null, void and of no effect; judgment in solido against all defendants ordering the $4,400 deposit returned to plaintiff, with legal interest from date of judgment until paid; and judgment dismissing all reconventional demands.
Defendants contend that the contract did not provide exclusively for a loan by a homestead and building and loan association, but provided for a loan or loans from any person willing to make the loan; and that the vendor was willing to make the loan on "homestead terms", which plaintiff rejected, so plaintiff was in default in refusing to take title per their agreement of sale.
We must first determine whether or not the agreement to purchase, by its literal terms and the parole evidence, was subject to the purchaser's ability to obtain a "homestead" loan, meaning a loan by a homestead and building and loan association. To this end, we shall consider the contract and parole evidence.
The agreement was confected on the printed form described as "Standard Form Real Estate Board of New Orleans, Inc." and is designated "Agreement to Purchase or Sell for exclusive use of `Realtors'." The agreement provides that the purchase price is $44,000, on the terms of $20,000 cash. Then follows blank lines. The agreement then continues in print:
"This sale is conditioned upon the ability of purchaser to borrow upon this property as security the sum of ($24,000.00) by a mortgage loan or loans at a rate of interest not to exceed (5½%) per annum, interest and principal payable on or before (10) years in equal monthly installments. Should purchaser, seller or agent be unable to obtain the loan stipulated above within _________ days from acceptance hereof, this contract shall then become null and void and the agent is hereby authorized to return the purchaser's deposit *184 in full. Commitment by lender to make loan subject to approval of title shall constitute obtaining of loan. * * *"
"Act of sale at expense of purchaser to be passed before (Homestead's) notary, on or prior to Sept. 1st, 1957, * * *" (All parenthetical words are typewritten.)
As these provisions are contradictory, to-wit, the printed portion reciting a loan by any third party, and the typewritten word "Homestead's" (notary) implying the third-party is to be a homestead and building and loan association, we must invoke the rule of interpretation that the intent is the last expression of the parties in a printed contract and governed by what they insert themselves. The provision that the act of sale is to be passed before "Homestead's" (notary) being typewritten, is the last expression of the parties. Dean v. Pisciotta, 220 La. 725, 57 So.2d 591.
At the trial of the case, the District Court very properly admitted parole evidence to confirm the contract's implication that the parties contemplated the loan was to be made by a homestead and building and loan association. The District Judge so concluded, and we agree with him.
The Assistant State Bank Examiner, in charge of homesteads and building and loan associations, testified that the lending plan of all such associations in New Orleans must be approved by the State Bank Commissioner and Supervisor of Homesteads and Building and Loan Associations (LSA-R.S. 6:887), and the lending plan approved restricted all such associations to loans not exceeding 70% of appraisals made by the Central Appraisal Bureau, maintained and supported by the associations.
The homestead and building and loan association ((Hibernia Homestead Assn.) to which plaintiff made application for a loan, refused to make a loan of $24,000, because it was in excess of the legal limit based upon the Central Appraisal Bureau's appraisal; hence, no other homestead and building and loan association could make the loan. Accordingly, it would have been an idle gesture for plaintiff to have applied to another such association. Bourgeois v. N. J. Clesi, Inc., La.App., 38 So.2d 427.
The good faith required of plaintiff to make a bona fide effort to get the stipulated loan was therefore fulfilled. Williams v. Cormier, La.App., 100 So.2d 307; Stephen L. Guice & Co. v. Perkowski, La.App., 12 So.2d 692.
The defendant-vendor contends that he was willing to make the loan "on homestead terms" or would take a second mortgage. This the plaintiff-purchaser, upon the advice of his attorney, rejected, contending, and properly so, that he agreed to buy the property subject to his ability to obtain a loan from a homestead and building and loan association, because he wanted the benefit of their appraisal, and other benefits.
Defendant-vendor, under cross-examination, admitted he was fully aware of the terms of the contract, particularly, that provision about "Homestead's" notary; and that he fully understood the loan was to be obtained from an outsider and not from him; that he left it to his agent, to whom he was to pay a commission, to arrange with the purchaser for the third-party financing.
Any one having experience with the purpose and operation of such associations knows full well that they are organized to promote thrift and home-owning; are very paternalistic in seeing that real estate taxes and insurance premiums are paid, and less harsh in defaulting their borrowers than private lenders. Furthermore, such associations usually retain their vendor's lien and mortgages for the full period, while private lenders often find it convenient to dispose of the mortgage and possibly submit the borrower to the whim or caprice of an unexpected and unwanted creditor.
*185 Defendants contend that, since the printed portion of the contract provides for "a loan or loans" plaintiff must accept multiple lenders, even if it be necessary to have second and third mortgages. This is untenable. Once we conclude the sale was made subject to a loan by a homestead and building and loan association, it can mean but one of them, since such associations are required by statute to obtain a vendor's lien and first mortgage on the real estate tendered as security; hence, only one such association could have made the loan (LSA-R.S. 6:766).
The president of one of defendant-realty brokers personally prepared the agreement of sale. Under cross-examination he testified:
"Q. * * * I ask you again, at that time, how was the balance of $24,000.00 to be paid? A. On the homestead payment plan."
After an admitted experience of 38 years as a realtor in New Orleans, he surely knew that a loan on the "homestead payment plan", to be passed before a "Homestead's" notary, could mean one thing only, namely, that the loan was to be financed by a homestead and building and loan association; that such associations, more often than not, are referred to as "Homestead's", and they uniformly require that all notarial acts, by which they acquire a vendor's lien and mortgage, must be executed before their own notary public. After first testifying that the word "Homestead's" was inadvertently written in the agreement, he later admitted he dictated the agreement to his secretary and when she read the completed draft back to him it contained the word "Homestead's", in designating the notary.
Our jurisprudence is uniformly to the effect that a stipulation for a particular form of financing, or through a specified type of financial agency, is a suspensive condition. If the suspensive condition cannot be fulfilled through no fault of the purchaser, the contract becomes unenforceable against the purchaser, who is then restored to his status quo ante LSA-C.C. Arts. 2035, 2038 and cases cited thereunder); and our jurisprudence further recognizes that the method of financing a deferred payment is for the sole benefit of the purchaser. He alone can waive or change the method. The vendor is interested only in getting the purchase price, regardless of the source. Morrison v. Mioton, 163 La. 1065, 113 So. 456; Weingart v. Delgado, 204 La. 752, 16 So.2d 254; Probst v. DiGiovanni, 232 La. 811, 95 So. 2d 321; Johnson v. Graham, La.App., 40 So.2d 500; Antonini v. Thrifty-Nifty Homes, La.App., 76 So.2d 564; Savich v. Ruiz, La.App., 32 So.2d 415; Decker v. Renaudin et al., 10 La.App. 725, 122 So. 600.
For the reasons assigned, the judgment of the District Court is affirmed.
Affirmed.