CHEHARDY, Judge.
This appeal arises from a suit by Londa Foster Meaux, individually and as adminis-tratrix of the Succession of Dudley J. Meaux, Jr., against Wayne L. Adams for breach of an agreement to purchase real estate. The trial judge found Adams liable and awarded damages in the amount of $27,480. Adams has appealed.
Mr. Adams offered to purchase a tract of land from Mrs. Meaux, provided he could obtain certain special financing arrangements. When his request for a loan was rejected by a bank officer, Adams notified his real estate agent. Mrs. Meaux and her attorney, however, did not learn the financing had fallen through until one day before the act of sale was to have been passed. They had already made the necessary legal preparations for the act of sale, such as opening the succession of Mr. Meaux, obtaining mortgage and conveyance certificates, et cetera. There was an outstanding mortgage on the property in question due and payable on October 30, 1981, which Mrs. Meaux planned to pay from the funds received in the sale to Adams. Because the sale fell through, she defaulted on the mortgage; a few days later, the mortgagor foreclosed, seized the property and sold it at public auction.
The purchase agreement in question is the standard form used by the Jefferson Board of Realtors, Inc. The parties inserted the following specific condition:
“Property sold and purchased * * * ■ for the sum of One hundred twenty-five thousand dollars and XX/100 ($125,000) Dollars. This agreement is contingent on the purchaser’s ability to borrow $130,000.00 from the Continental Bank for the period of one year from the act of sale at a rate not to exceed 12%. Principal and interest shall be due and payable to the bank in a single payment one year after the act of sale.”
The only time limitation is in a paragraph providing the act of sale was to be passed on or prior to October 30,1981. The agreement was signed by Mr. Adams on August 18, 1981, and by Mrs. Meaux on August 21, 1981.
In her petition Mrs. Meaux alleged Mr. Adams had failed to make a good-faith effort to secure the financing upon which the purchase agreement was conditioned. She alleged that as a result of defendant’s failure to “carry through with the agreement” the property was placed out of commerce for a period of approximately 2¾⅞ months, resulting in foreclosure of the mortgage and subsequent sale of the property at public auction. Mrs. Meaux alleged she suffered damages thereby in the amount of $27,480, the difference between the price the property brought at public auction and the price the defendant was to have paid had the proposed sale to him been carried through.
At trial, Mr. Adams testified he is a real estate developer and that this particular property had been offered to him several times before, but he had not been interested in it. Eventually, however, his real estate agent, Randall Walker, came to him and advised him he could get “a great deal” on the property and explained the details. Adams told Walker he was interested only if he could borrow the sale price plus the agent’s commission (totaling $130,-000) at a special financing rate of 12% with no principal or interest due until a year after the sale; he did not want it at “market financing.”
He discussed the deal with Michael Bush, a vice-president of Continental Bank, around August 10 or 15, 1981; Bush indicated the bank would agree to the stipulated financing terms. After the purchase contract had been signed, he talked to Bush again, but this time Bush informed him Continental Bank was no longer interested in loaning the money. Adams never made any written application to Continental Bank for the loan.
Following his conversation with Bush, Adams notified Randall Walker he could not obtain the financing. Asked why he had not contacted Mrs. Meaux or her attor *672 ney as soon as he learned he could not get the loan, he said it was not his business to communicate with them:
“I did tell the person who I should tell and that was my agent who is representing me * * *. Again, that is why I have an agent. There is no need for me to communicate with you all.”
Mr. Adams admitted he had called Mrs. Meaux’s attorney on October 29, 1981, the day before the act of sale was to have been passed under the terms of the purchase agreement, to advise him the financing was unavailable. He stated he did so because Walker, his agent, requested it.
On cross-examination, plaintiffs attorney attempted to establish that Adams was aware of the precarious situation in which the property stood relative to foreclosure. Asked whether he had been told the Meauxs had to pay off the mortgage balance by October 30, Mr. Adams said,
“I did not know all the details. I didn’t agree to pay off any mortgage with Continental Bank or anyone. * * * I wasn’t aware of any deadline as far as the date goes, no sir. * * * I had it explained to me the whole gist of the situation, which was very complicated. I don’t remember every detail of it.”
Michael Bush testified that Adams had contacted him prior to August 18, 1981 to discuss financing on some lots in Kensing-ton Gardens. He could not recall definitely the terms of the proposed financing, except “they were something less than what they were in normal banking practices at the time for that type of credit.” Bush said the bank had a loan, made to Mr. Meaux before his death, that was in jeopardy; Bush indicated to Adams that if there was any doubt as to the bank’s getting paid on that, they would consider Adams’ proposed loan. He made no commitment at that point, however.
Bush stated that when Adams contacted him again about the deal, Bush told him the bank’s loan to Meaux was no longer in jeopardy and therefore the bank was not interested in loaning money to Adams to acquire the lots under the terms and conditions he requested.
Bush stated he did not require Adams to make a formal loan application. In fact, he stated, the bank did not require a loan application to be in written form:
“A. There is nothing ever received from the customer for an official request. Generally, we generate that internal. The officer does — to present to the board, once the officer decides the merits being presented.
[[Image here]]
“Q. But you didn’t have any written agreement to the effect that he wants to make an application?
“A. We’ve never done that. I don’t know of any bank that does.”
Bush testified further that, although he never presented Adams’ request to the bank’s board of directors for approval, when he turned down the loan he did so in his capacity as an officer of the bank, not as an individual:
“The bank has a loan policy which I have to administer and that policy indicated that this loan would not be approved as it was requested. So, there was no value of me to putting through any further work in that behalf.”
Although it is unclear from the transcript exactly when Bush rejected Adams’ loan proposal, it appears to have been on either August 21 or September 21, 1981.
In its reasons for judgment, the district court stated,
“The Court concludes that defendant had a legal right to withdraw from the contract when the specified lending agency rejected his application for a loan. However, his failure to timely notify the seller was negligence to the point of bad faith.
“In effect he took the property out of commerce for three months and deprived the plaintiff of finding another purchaser in order to stave off the foreclosure proceedings.
“The Court concludes the actions of defendant caused her to lose the differ *673 ence between the act of sale price of $125,000.00 and the mortgage balance of $97,520.00 or a total sum of $27,580.00 which the Court awards as damages herein.”*
In his brief to this court, appellant has raised several specifications of error. We find it unnecessary to address these individually because our decision turns on one pivotal point.
The issue before us on appeal is whether the trial court erred in its implicit holding that the defendant had a duty to give early notice of the loan rejection although the written contract between the parties did not require such notice.
“Agreements legally entered into have the effect of laws on those who have formed them. * * *” LSA-C.C. art. 1901. Courts are bound to give legal effect to contracts according to the true intent of the parties; the intent is determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences. LSA-C.C. art. 1945.
The issue the plaintiff attempted to establish at trial — although not one raised through her pleadings — was that defendant had an implied duty under the purchase agreement to notify her promptly when his loan was turned down. Mrs. Meaux’s attorney attempted to establish that because Adams was aware of her situation relative to mortgage foreclosure, in effect he agreed to be responsible for any mortgage payments that became due from the time the purchase agreement was signed until the date of sale.
There is no basis for this either in the written contract or in the testimony. Although Mr. Adams admitted he was aware of some of the seller’s economic problems, obviously he was interested only in purchasing the property at a bargain. There is nothing to show either he or Mrs. Meaux intended that he become liable for her financial difficulties.
Without a provision in the agreement requiring the purchaser to notify the seller of the acceptance or refusal of his loan application within a specified time, we cannot impose such a burden on him. Accordingly, we conclude the trial judge erred in finding Mr. Adams liable to Mrs. Meaux.
The court’s implicit finding was that Adams’ verbal application for the loan, under the circumstances here, was a good faith effort to secure it. This conclusion accords with the law. See Century 21 Acadia Realty & Dev. v. Brough, 393 So.2d 287 (La.App. 1st Cir.1980); Garlete v. Rodriguez, 126 So.2d 182 (La.App. 4th Cir.1961).
In light of our conclusion, it is unnecessary for us to address the issues raised by appellant concerning damages.
For the foregoing reasons, the judgment of the district court is reversed, and the suit is dismissed. All costs are to be paid by plaintiff-appellee, Londa Foster Meaux.
REVERSED AND RENDERED.

 Apparently the amount stated in the reasons for judgment is a typographical error. The amount actually awarded in the judgment is $27,480.