526 So.2d 380 (1988)
MERRILL LYNCH REALTY, INC.
v.
Emelda WILLIAMS, et al.
No. CA-9044.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1988.
*381 Val A. Schaff, III, Schaff & Currier, New Orleans, for defendant, Jacqueline S. Calongne.
D. Tracey Tiller, Voelker & Battard, New Orleans, for defendants, Emelda Williams and Thomas W. Williams.
Before WARD, and ARMSTRONG, JJ., and HUFFT, J. Pro Tem.
WARD, Judge.
Merrill Lynch Realty, Inc. instituted a concursus proceeding to resolve conflicting claims to money deposited under an agreement to purchase real estate. In a summary judgment ordering a return of the deposit to the purchasers, the Trial Judge held that the agreement was void because the purchasers, through no fault of their own, were unable to obtain the type of financing upon which the agreement was conditioned. The seller appeals the summary judgment. We affirm.
On November 5, 1986, Emelda and Thomas W. Williams entered into an agreement to purchase a house and lot from Jacqueline S. Calongne for $160,000.00 with a $60,000.00 cash down payment, with the balance of the price to come from a loan secured by a mortgage on the property. A handwritten notation on the agreement, a standard Merrill Lynch form contract, stated that the balance of the purchase price would be paid "by Homestead Loan." The agreement was conditioned upon the Williamses' ability to obtain the loan stipulated in the agreement by December 5, 1986.
The Williamses applied to Pelican Homestead and Savings Association for the loan but were notified on December 18, 1986 that their loan request was denied because their debt to income ratio was too high. According to their affidavit in support of summary judgment, the Williamses entered into the purchase agreement relying upon their anticipated receipt of a disability annuity, but the disability claim was rejected by the United States Railroad Retirement Board. Before the Williamses were notified of the denial of their loan application, Calongne's attorney informed the Williamses' real estate agent that Calongne was willing to finance the balance of the purchase price on the terms and conditions stated in the agreement. Calongne made this offer presumably after learning that the Pelican loan would be denied because the Williamses' disability claim had been rejected.
After offering owner financing, Calongne set up an Act of Sale to transfer the property. When the Williamses did not attend the Act of Sale, Calongne's attorney, as the closing notary, entered a Proces Verbal of Default against the Williamses. When both parties demanded the deposit which had been given with the purchase agreement, Merrill Lynch, the listing agency which held the deposit in escrow, filed the present concursus petition.
Calongne answered the petition, claiming the deposit and alleging that the Williamses breached the purchase agreement by failing to accept owner financing as an alternative to a homestead loan. The Williamses also answered, contending that they were entitled to a return of their deposit because a suspensive condition of the agreement failed, rendering the agreement void and unenforceable.
The issue in this appeal is whether, under the terms of the agreement, the Williamses were obligated to accept Calongne's owner financing in order to fulfill their obligations in good faith. Calongne argues that the Trial Court erred by failing to consider all provisions in the agreement and by granting summary judgment when testimony would establish that there are genuine issues of fact in dispute.
*382 The dispute concerns the interpretation and application of language in the purchase agreement. While the handwritten notation "balance by homestead loan" clearly shows the parties' agreement that there would be a particular financing arrangement, a printed sentence in the form states, "Seller reserves the right to provide all or part of the above mentioned loan(s)." The printed portion of the form also lists various financing methods such as "Conventional or Homestead" or "Owner Financing", none of which are checked off in the blanks provided. Calongne argues that if a homestead loan was the only acceptable financing, it could have been more clearly designated in the agreement. Likewise, Calongne asserts that the handwritten insertion that the Act of Sale was to be passed before the Lender's notary indicates that there was no desire to limit the financing method because the purchasers could have inserted, more specifically, Homestead's notary had they intended a homestead loan as the only acceptable financing.
This Court, in Garlete v. Rodriguez, 126 So.2d 182 (La.App. 4th Cir.1961), was presented with a situation similar to the instant case. In Garlete, a purchaser sued for the return of his deposit, claiming that the sale was conditioned upon his ability to obtain a homestead loan, and since the loan was not obtainable, the purchase agreement could not be enforced. The Garlete agreement contained contradictory provisions: the printed portion indicated that the loan would be made by any third party while a typewritten portion stated that the Act of Sale was to be passed before the "homestead's" notary. The purchaser had rejected the seller's offer to finance the loan on "homestead terms." The Court determined from the terms of the agreement and parol evidence that the agreement specified a method of financing which the purchaser was unable to obtain, and affirmed the judgment ordering the deposit returned to the purchaser.
The instant case presents more compelling facts. A hand written stipulation that the loan balance would be paid by a homestead loan more explicitly indicates an intent to limit financing alternatives than does a typed notation that the homestead's notary would pass the Act of Sale. Indeed, the evidence of the parties' intent in the instant case is so conclusive that there is no need for the parties to have further shown their intent by checking off financing methods printed on the form or by designating the closing notary in any manner other than writing "Lender's."
Nevertheless, the printed statement that the seller reserves the right to provide financing contradicts the handwritten notation that the balance of the purchase price would be paid by a homestead loan. With such conflicting provisions, we apply the rule of contract interpretation that the intent is the last expression of the parties in a printed contract and is governed by what they insert themselves. Garlete. Moreover, when hand written portions conflict with printed portions, the hand written portions prevail. Kuhn v. Stan A. Plauche Real Estate, 249 La. 85, 185 So.2d 210 (1966). The handwritten provision that the balance will be paid by homestead loan is the last expression of the parties. As such, this provision reflects the parties' intent and makes the agreement subject to a suspensive condition concerning a particular financing method. Therefore, after reviewing the entire agreement in light of these rules of interpretation, we have determined that the parties intended to limit financing options to a homestead loan.
Calongne argues that the Trial Judge erred by granting summary judgment. With the motion for summary judgment, the purchasers presented the purchase agreement, the homestead documents notifying them of the loan rejection and the basis for that rejection, and affidavits from the parties. From these documents the Trial Judge reasonably concluded that the Williamses did exactly what the agreement called for by making a good faith application to a homestead for the loan described in the agreement.
The Williamses good faith effort is not diminished because, pending application *383 to the homestead, they did not apply elsewhere for the loan. They were under no duty to do so. Weger v. Silveria, 460 So.2d 49 (La.App. 1st Cir.1984); Katz v. Chatelain, 321 So.2d 802 (La.App. 4th Cir.1975). Although the Williamses were not informed until December 18, 1986 that their loan request was denied, the agreement by its own terms had expired on December 5, 1986. After the contract expired, the Williamses were under no obligation to make another loan application. Weger.
Contrary to Calongne's argument, neither the Trial Judge nor this Court is required to review parol evidence in the form of testimony merely because the Garlete case considered parol evidence. Significantly the Garlete decision was based on a review of a trial proceeding, not a summary judgment hearing. Furthermore, even if the instant case had proceeded to trial, there is no ambiguity in the contract concerning the agreed-upon method of financing and thus, parol evidence relative to the parties' intent would be prohibited by La.C. C. art. 2046. Therefore, the motion for summary judgment established that there were no issues of fact in dispute and that the Williamses were entitled to judgment as a matter of law.
Accordingly, we affirm the summary judgment in favor of the Williamses, ordering their deposit returned to them. All costs of this appeal are assessed to Calongne.
AFFIRMED.
PRESTON H. HUFFT, J. Pro Tem., dissents with reasons.
PRESTON H. HUFFT, Judge, dissenting.
I respectfully dissent.
I do not find that line 15 of the agreement by which the purchasers indicate the type of loan they obligate themselves to obtain is in conflict with line 36 by which the seller reserves unto himself the right to provide all or part of the loan referred to in line 15. (A copy of the agreement is annexed as Appendix I).
Line 15 limits the type of loan the purchasers obligate themselves in line 33 to make good faith application for and also limits the kinds of outside loans the agent or seller may obtain for the purchasers' benefit under line 31 of the agreement. By their handwritten insertion of "Balance by Homestead Loan" on line 15, the purchasers were under no obligation under line 33 to seek a loan comparable to the terms set forth in the agreement from any bank, mortgage company, or other lending institution. By the same token, because of the insertion of "Balance by Homestead Loan" on line 15, the purchasers could not be compelled to accept a loan comparable to the terms set forth in the agreement from any bank, mortgage company or other lending institution through arrangements made by the agent or the seller.
Although the purchasers could not compel the owner to finance the loan, the reservation by the owner of the right to do so in line 36 does not in any way conflict with the handwritten provisions of line 15. Line 36 provides for an entirely separate and distinct undertaking than the methods of financing set forth in lines 12 through 15. For instance, if Owner Financing had been checked on line 13, then the purchaser would have been entitled to compel the seller to furnish the financing as this would have been one of the means agreed upon for financing the sale. It would not have been a reservation by the owner of the right to financeit would have been an agreement to do so enforceable by the purchaser.
Additionally, I do not find the handwritten "Balance by Homestead Loan" to be so compelling that the handwritten "Lender's" before notary on line 46 could only mean the homestead's notary. The term "Lender's" is broad enough to include the notary of the homestead-lender if such a loan is obtainable by either the purchasers, agent or seller or the notary of the owner-lender if the owner desires to exercise his reservation to finance the loan under the terms set forth in the agreement.
I do not believe that Garlete v. Rodriguez, 126 So.2d 182 (La.App. 4th Cir.1961), *384 is supportive of the granting of a summary judgment in favor of the purchasers in this case on the face of the agreement. Garlete involved a standard real estate form indicating that the financing could be made by any third party and a subsequent typewritten portion stating that the Act of Sale was to be passed before the homestead's notary. The standard form at the time of Garlete did not include a clause similar to the owner's reservation clause (line 36) of the agreement in this case. The court in Garlete correctly decided after a trial on the merits, including the introduction of parol evidence, that the purchaser intended by the insertion of "homestead's notary" to accept only a homestead loan as the means of financing the sale of the house because he wanted to have the protection of a homestead's appraisal system and a homestead's way of doing business in the event of any future problems with the loan. The insertion of "homestead's notary" in the Garlete agreement was in conflict with the printed portion, which required the purchaser to accept a loan provided by any third party.
I would deny the grant of a summary judgment on the face of the agreement in favor of the purchasers. At best, recovery by the purchasers would depend on a determination after a trial on the merits, including the introduction of parol evidence as per Garlete, that the handwritten insertion of "Balance by Homestead Loan" on line 15 and "Lender's" on line 46 was intended to and did negate the express language of line 36 reserving unto the seller the right to finance the loan.
*385 
*386 
*387 
*388 
*389 
*390