McBRIDE, Judge.
Plaintiff, Joseph M. Savich, “listed” for sale with Charles A. Bourgeois, a real estate broker, his property which is a double cottage bearing the municipal numbers 4604-06 South Carrollton Avenue, this city.
On August 22, 1945, Savich signed an offer to sell the property for the price of $6,200, of which $2,200 was to be paid in cash and the balance of $4,000 to be obtained by the purchaser from a homestead association or other lending institution. The defendant, John E. Ruiz, accepted the plaintiff’s offer to sell the next day.
The offer and acceptance, among other stipulations, contained the following:
“* * * This sale is conditioned upon the ability of the purchaser to borrow upon this property as surety the sum of $4000.00 either by a Homestead loan from any Homestead on the usual Homestead terms, or by a mortgage loan from some other source at a rate of interest not to exceed 5% per annum and for a period not less than 14 years, which loan the purchaser obligates himself to obtain if procurable. Either loan to be secured by purchaser or agent 15 days from acceptance hereof.
“ * * * If this offer is accepted purchaser will deposit with Vendor’s Agent immediately in cash, six hundred twenty dollars and 00/100 ($620.00) Dollars.
“ * * * In the event that purchaser fails to comply with this agreement within the time specified, the vendor shall have the right either to declare the deposit, ipso facto, forfeited, without formality and without placing purchaser in default, time *416 being the essence of this contract; or the vendor may demand specific performance. In the event that the deposit is forfeited, the commission of the agent shall be paid out of this deposit, reserving to the vendor the right to proceed against purchaser for the recovery of the amount of the commission. In the event that the vendor does not comply with this agreement to sell within the time specified, purchaser shall have the right either to demand the return of double the deposit, or specific performance. The commission is earned on the signing of the agreement and shall not be affected by any subsequent agreement of the parties hereto, or by annulment of contract by any court.”
On September 6, 1945, Bourgeois, the real estate agent, advised Ruiz by letter that the Home Building & Loan Association had approved a loan of $4,000 on the property as stipulated in the agreement, and requested that the purchaser appear at the office of the loan association to sign the proper application, and also to forward to Bourgeois a check for $620 representing 10% of the purchase price, as stipulated in the agreement.
On the same day Ruiz sent a letter to Bourgeois advising him that Ruiz, in accepting the offer of sale, had not acted individually but was representing a client named Peter Jackson, and that “Mr. Jackson finds it impossible to carry out the purchase of the property, and desires me to have the sale cancelled.” Ruiz refused to deposit with Bourgeois the 10% of the purchase price, and took no further steps in the transaction.
Savich now brings this suit against Ruiz for $620, on the theory that under the terms of the contract he has the right to declare the amount of the deposit forfeited. Savich claims the further sum of $200 as the fee of his attorney for bringing the suit. The petition contains the further allegation: “And now appears the said Charles A. Bourgeois, of full age and residing in the Parish of Orleans, a duly licensed realtor, and duly appointed agent of the said petition(er), J. M. Savich, who joins in this petition, and under the terms and conditions set out (in) the said contract herein referred to demands of the said defendant the sum of One Hundred Fifty five Dollars, ($155.00) being his share of the commission as provided in said agreement.”
In the prayer, Bourgeois prayed for judgment in his favor for $155.
The matter was tried on its merits in the court below and plaintiff was granted a judgment against defendant for $620. The judgment did not allow plaintiff to recover the $200 for attorney’s fees. The court made no allowance to Bourgeois, but reserved his right to sue for the commission of $155. From this judgment defendant has appealed.
The petition alleges that in accordance with the conditions of the agreement a loan had been approved for the sum of $4,000 by the Home Building & Loan Association, and that the defendant had been informed thereof in due course. It is also alleged that the defendant, in refusing to complete the sale by taking title, violated his contract, and that plaintiff, who was ready and willing at all times to carry o-ut his part thereof, is entitled to have the amount of the deposit, $620, forfeited to him.
Ruiz has defended the suit on the ground that (1) in accepting the offer of sale he had not acted in his individual capacity but was acting as agent for Peter S. Jackson, whose identity had been previously disclosed to the plaintiff, and also to the plaintiff’s agent, and (2) the loan of $4,000 contemplated by the agreement could not be secured, and as the condition upon which the offer was accepted was never fulfilled, no valid contract ever came into being.
We find it unnecessary to pass upon the question of whether Ruiz acted individually or as the agent for his alleged principal, Peter S. Jackson, because we find that the case can be disposed of on the other defense raised, i.e., whether the suspensive condition respecting the defendant’s ability to borrow $4,000 on the property was fulfilled.
Ruiz testified that he contacted several lending institutions and was unable to find one which would lend him $4,000 on the *417 property. His testimony to that effect stands alone and is uncontradicted.
Shortly after, the offer and acceptance of sale was executed, Bourgeois, the agent for plaintiff, made an application with the Home Building & Loan Association in order that the homestead might have an appraisal of the property made by the Central Appraisal Bureau which could serve as a basis for a loan on the property. Under the rules which prevail amongst the local homesteads they will lend up to 80% of the appraisal made by the Central Appraisal Bureau on any particular propertjr, and we understand from counsel that under the rules of the State Banking Department no loan exceeding 80% of its appraised value may be made on any property.
Upon being advised by Bourgeois that the Home Building & Loan Association had made a commitment to lend $4,000 on the property, Ruiz contacted the secretary of the loan association who informed him that it could not lend $4,000 on the property as the Central Appraisal Bureau had appraised it at $4,750, and that the maximum amount (80%) which could be loaned with only the property as security would be $3,800. The homestead official stated to Ruiz that if some one would pledge $250 of the capital stock of the Home Building & Loan Association as additional security, the amount of the loan could be increased to $4,000.
The plaintiff admits that the property alone was not acceptable as security. Bourgeois testified that he was willing to pledge the $250 of stock to the homestead, and that it would not have been necessary for the defendant to obligate himself therefor in any way, and that as a result defendant would have secured the full $4,000 loan, merely giving as security the property which he was to purchase from plaintiff.
Agreements legally entered into have the same effect as laws on those who have formed them. C.C. art. 1901. See also American Cotton Cooperative Ass’n, v. New Orleans and Vicksburg Packet Co., 180 La. 836, 157 So. 733, and Howard v. Faciane, 3 La.App. 593.
The agreement stipulated that the sale is conditioned upon the ability of the purchaser to borrow “upon this property as surety” the sum of $4,000. The undisputed evidence shows that the Home Building & Loan Association would not lend $4,000 with only the property as security. It required that $250 of its stock be pledged in addition to the property. Therefore, the 'condition upon which the sale was predicated was never met and we must conclude that the defendant was at liberty to recede from the contract. Decker v. Renaudin, 10 La.App. 725, 122 So. 600.
The testimony shows that the purchaser was interested in learning whether the appraisal bureau would place a $5,000 valuation on the property, in order that he might know that he was getting value received for his money. It seems to us that when a purchaser agrees to buy property under the conditions as contained in the agreement here, he does so for two reasons, (1) to learn what appraisement would be placed on the property by the appraisers to reassure himself as to his bargain, and (2) so that he can secure sufficient finances to consummate the purchase of the property. The purchaser was disappointed, according to his statements, that the appraisers had placed a valuation of only $4,750 on the property, and as a result lost interest in the bargain.
The purchaser seems to have been in good faith. His uncontradicted testimony shows that he made several attempts to secure a $4,000 loan from other institutions, but his efforts met with no success. The condition required that the loan be secured by “purchaser or agent” within 15 days. A loan of the proper amount with the property as security could not be obtained either by the purchaser or agent within the term stipulated, and under the law the condition must be considered as broken and the agreement thereby rendered unenforceable.
Article 2038 of the Civil Code provides: “When an obligation has been contracted on condition that an event shall happen within a limited time, the condition is considered as broken, when the time has ex *418 pired without the event having taken place. ‡ *
For the reasons assigned, the judgment appealed from is reversed and the demands of Joseph M. Savich and Charles A. Bourgeois are dismissed at their costs.
Reversed.