76 So.2d 564 (1955)
Marion J. ANTONINI, Jr.,
v.
THRIFTY-NIFTY HOMES, Inc.
No. 20511.
Court of Appeal of Louisiana, Orleans.
January 3, 1955.
Ewin & Robertson, New Orleans, for defendant and appellant.
S. Sanford Levy, New Orleans, for plaintiff and appellee.
McBRIDE, Judge.
This is a suit whereby plaintiff seeks a judgment against defendant for $725, the amounted deposited with defendant representing ten percent of the purchase price of certain real property which plaintiff had agreed to buy.
The agreement of sale was entered into on January 16, 1954, and contained the suspensive condition:
"This sale is conditioned upon the ability of the purchaser to borrow upon this property as security the sum of $Sixty two hundred and fifty by mortgage loans or loan. Should the loan stipulated above be unobtainable by the purchaser within 30 days from date of acceptance hereof, this contract shall then become null and void, and the vendor will return the purchaser's deposit in full."
The petition alleges that plaintiff was unable to obtain the necessary loan and under the terms of the agreement he is entitled to a return of the deposit.
The defense is plaintiff made no effort in good faith to finance the purchase although *565 a loan or loans were available to him, and that he did not purchase the property because he had other reasons for not doing so.
After a trial on the merits below, there was judgment in favor of plaintiff and defendant has appealed.
Under the terms of the agreement, plaintiff clearly is entitled to have his deposit returned.
The evidence is that on February 8, 1954, plaintiff applied to the Commonwealth Homestead Association in New Orleans for a loan of $6,250, but the maximum amount that the association would lend with the property as security was $4,000. It is true that a Mr. Leonhardt, President of the Leonhardt Construction Company and also President of the defendant corporation, testified that early in February he called plaintiff by telephone and informed the plaintiff that "we" would lend him the difference between $4,000 and $6,250 "if he couldn't get it elsewhere and that the terms would be a year and a half at eight percent (8%)." The record does not show who the "we" mentioned by Mr. Leonhardt stood for, but we take the testimony to import that the defendant offered to carry plaintiff's second mortgage note on the above terms if a loan was unobtainable elsewhere.
We do not think plaintiff was obligated to accept even if it could be said that Leonhardt on behalf of the defendant had offered to "lend" the money, for the simple reason that Leonhardt's terms were eight percent interest and repayment in a year and a half. Leonhardt's stipulation for the highest rate of conventional interest and his proviso that the "loan" would be payable in a year and a half were certainly not reasonable and was not the type of loan which was within the contemplation of the parties when the agreement was made. Defendant could just as well have offered to lend plaintiff the difference between what he could borrow elsewhere and the credit portion of the purchase price on a second mortgage note which was to be payable the next day for all the good it would have done plaintiff. It seems to us that a fair interpretation of the contract which is attached to the petition and signed by the parties would be that the contract would be enforceable provided the purchaser could secure the $6,250 loan on the usual and customary terms and conditions, to be repaid over a period of years, such as loans made by any homestead, the Federal Housing Authority, or other long-term lending institution. Johnson v. Graham, La.App., 35 So.2d 278.
Nor do we believe that it was ever thought that the plaintiff should give his vendor's lien note to defendant for a portion of the price. The contract provided that the consideration was payable in "cash." In view of this stipulation, the conclusion is inescapable that neither of the parties at the time of the confecting of the agreement entertained any idea whatsoever of carrying out the financing of the sale wholly or partly between the seller and purchaser. Johnson v. Graham, La.App., 40 So.2d 500.
See also Savich v. Ruiz, La.App., 32 So. 2d 415.
The defendant also contends that the inability to secure the loan was not why plaintiff refused to consummate the sale contract, but he had other reasons for not desiring to take title to the property. Plaintiff did make some complaint about the property, but this was not the underlying cause for his failure to go through with his bargain. Plaintiff did not purchase the property because of the lack of funds due to his inability to properly finance the deal. This being so, even if he had made the statement that he was dissatisfied with the house, this would not militate against his right to have the deposit returned to him. The agreement in the plainest of terms provides that the deposit would be returned if plaintiff could not secure the loan within thirty days, and the evidence is convincing that a loan in a sufficient amount was not procurable.
Appellee, by way of answer to the appeal, alleges that the appeal is frivolous *566 and prays that he be awarded ten percent statutory damages. We do not believe that the appellee is entitled to such damages as it does not strike us that the appeal could be called a frivolous one. The defense involved a legal question and appellant was most serious in urging it.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.