153 So.2d 489 (1963)
Miss Mildred L. BREWSTER
v.
Hal Ross YOCKEY and James Russell, in Solido.
No. 1057.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1963.
Rehearing Denied June 4, 1963.
Richard Dowling, New Orleans, for plaintiff-appellant. *490 Chehardy & Werhan, John C. Werhan, New Orleans, for Hal Ross Yockey, defendant-appellee.
Adams & Reese, John T. Cooper, New Orleans, for James Russell, defendant-appellee.
Before YARRUT, CHASEZ and HALL, JJ.
CHASEZ, Judge.
The plaintiff, Mildred L. Brewster, brought this action against defendants, Hal Ross Yockey and James Russell, for a return of the deposit made by her under the terms of a real estate contract amounting to the sum of $1,950.00. After the court disposed of the exceptions to the jurisdiction of the court filed by the defendant, Russell, and the exceptions of nonjoinder filed by the defendants, Hal Ross Yockey and James Russell, both defendants filed their answers and reconventional demands seeking judgment against the plaintiff.
The trial court very cogently set forth the important facts elicited at the trial of this case on the merits as follows:
"Petitioner, Miss Mildred M. Brewster, brings this suit against Hal Ross Yockey, as owner, and James Russell, as real estate broker, for the sum of $1,950.00. This suit arises out of a contract to purchase dated January 22, 1960. Under the terms of this contract, Miss Brewster agreed to purchase, or offered to agree to purchase, No. 3 Oaklawn Drive, Metairie, Parish of Jefferson, from Hal Ross Yockey. The contract was duly signed by Miss Brewster and by Hal Ross Yockey, and the selling agent was listed as E. A. Russell, signed June 22, 1960. The contract provided for a cash down payment of $8000.00, conditioned upon obtaining a Homestead or conventional loan of $11,500.00 over a period of twenty or twenty-five years. The plaintiff deposited with Russell the sum of $1950.00 as provided for by the contract.
"The petition alleges that the plaintiff applied to the Eureka Homestead in the City of New Orleans for a loan of $11,500.00 to be paid over a period of twenty or twenty-five years, and that the Eureka Homestead declined to grant said loan to petitioner; that thereafter petitioner made other contacts and could not obtain said loan upon the terms and conditions set forth in said offer; and she further alleges that the contract is void for uncertainty in that it fails to provide the rate of interest in said agreement and fails to specifically designate the length of time the loan should run.
"Petitioner further alleges that due to the following clause of the contract: `Should the loan required be unobtainable by purchaser, seller or agent before the date for the passing of the Act of Sale, this agreement shall become null and void, and the agent is authorized to return purchaser's deposit in full,' she is entitled to the return of her deposit.
"The testimony of Mr. Benecke of the Eureka Homestead was to the effect that the plaintiff had verbally applied to him for a loan; that he had gone over the contract with the purchaser, the repairs to be done to the property, and had told the plaintiffand he so testifiedthat she did not have sufficient salary to qualify for a loan with the Eureka Homestead on this particular piece of property; and further, that the property was in need of repairs, and the Eureka Homestead did not desire to make the loan. No written application was ever made to the Eureka Homestead or to its loan committee, because Mr. Benecke, acting for the Association, had verbally advised plaintiff that such a loan would not be obtainable, and that ended the matter there.

*491 "The testimony of the plaintiff is that she then placed the matter in the hands of Mr. Joseph Rosenberg, who was her attorney in these proceedings prior to present counsel, and Mr. Rosenberg attempted to obtain loans, she believed, from other sources, and reported that he was unable to do so.
"There is testimony in the record by the defendants and by Mr. Jeansonne to the effect that they called upon the Jackson Homestead within the time limits of the contract and talked to the manager of the Jackson Homestead, who stated that he believed such a loan was tenable but that the plaintiff would have to make a written application, which is the rule of all Homesteads in the City of New Orleans. The testimony is replete to the effect that the plaintiff never attempted to obtain a loan from any other source other than her efforts through the Eureka Homestead, and whatever Mr. Rosenberg did. Mr. Rosenberg was not produced as a witness to testify as to what he may have done in relation to obtaining a loan for this lady, although the Court knows Mr. Rosenberg as an attorney and he is sure that his presence could have been easily obtained if it was desired.
"The testimony is further to the effect that the plaintiff refused to talk to Mr. Yockey, Mr. Jeansonne or Mr. Russell concerning the transaction after she notified them, Mr. Yockey over the telephone and perhaps Mr. Russell also, that she was unable to obtain a loan from the Eureka Homestead. There are documents in the record to the effect that Mr. Jeansonne or Mr. Russell, either one or the other, notified her prior to the expiration date of the contract to the effect they thought she would be able to obtain a loan from Jackson Homestead had she made proper application. The record shows she did not desire to cooperate.
"The plaintiff on the witness stand characterized the premises she had bought as being in a deplorable condition, that it was sagging, that the bathroom was in a deplorable condition, and it is easy for the Court to discern that she did not care to go through with the contract.
"There is in the record the testimony of Mr. Russell, Mr. Jeansonne and Mr. Yockey to the effect that the plaintiff called them even at late hours at night during the time that the contract was in being, and after the date that it expired, when she was attempting to get her deposit back, and used such language that they cared not to repeat it in the Courtroom. They said the conversation was a one way conversation, and it has not been denied, to the effect she called them up and told them certain things but did not desire for them to answer, and therefore it was a monologue, whereafter the phone was hung up.
"Nowhere in the record does it show that plaintiff was attempting to get the loan after the time Mr. Bennecke turned her down at the Eureka Homestead.
"Under the law, counsel states that the clause with reference to the Homestead loan and the purchaser being able to secure same is a potestative condition. This the Court does not agree with.
"The Court finds it may be a mixed condition, or it may be a suspensive condition, but it is not a potestative condition.
"Counsel states it was the duty under the contract for the seller to make a tender of title. Under the law a tender of title, when it is a vain and useless thing, does not have to be made.
"Accordingly, there will be a judgment dismissing plaintiff's suit.

*492 "The defendants, Yockey and Russell, have reconvened, Yockey in the sum of $1950.00 and Russell in the sum of $1170.00 plus attorney's fees which are called for by the contract in the sum of $390.00. As previously stated, Yockey asked for $1950.00, being the amount deposited which is to be forfeited, and Russell asked for his commission which is due out of the deposit. There will be a judgment in favor of Russell for the sum of $1150.00 plus the attorney's fees which are extra under the contract and there will be a judgment in favor of Mr. Yockey in the amount of the difference between the $1150.00 commission figure and the $1950.00 deposit figure."
Plaintiff appeals from this judgment on the following grounds:
(1) That a provision in an agreement to purchase real estate requiring that the purchaser obtain a homestead or conventional loan is a potestative condition invalidating the contract; and
(2) In the alternative, should the court find that such provision is not potestative, plaintiff alleges she made a good faith attempt to comply with this provision of the contract but such loan was unobtainable and under the terms of the agreement, the agreement to purchase is now void, and she is entitled to the return of her deposit in full.
The law of Louisiana is now well settled that a contractual provision making a sale contingent on the purchaser's obtaining a particular loan on the property is not a potestative condition rendering the agreement null and void as to the obligor under LSA-C.C. arts. 2024 and 2034. As stated by the trial judge, it is a valid suspensive condition which imposes upon the purchaser the inescapable duty to make bona fide efforts to obtain the loan, Morrison v. Mioton, 163 La. 1065, 113 So. 456; Braden v. Reisch, La.App., 125 So.2d 781; Williams v. Cormier, La.App., 100 So.2d 307, and cases cited therein; Stephen L. Guice & Co. v. Perkowski, La.App., 12 So.2d 692 (overruling East Bank Land Company v. Hoffstetter, 13 La.App. 564, 125 So. 160, relied on by plaintiff).
Hence, the only question remaining to be resolved is whether or not plaintiff made reasonable, good faith attempts to secure a homestead or other loan under the jurisprudence above. The record shows that plaintiff applied to only one homestead, Eureka Homestead Society. Although a letter dated July 25, 1960, from Mr. F. W. Bennecke, secretary and general manager of Eureka Homestead Society to plaintiff was introduced in evidence to show that such an application had been made, on cross-examination Mr. Bennecke testified as follows:
"Q. Mr. Bennecke, was a written application made?
"A. Yes, sir, I'm not familiar with the details of it, but she did make application to us for a loan.
"Q. Well, did you actually discuss the matter with Miss Brewster, or did someone in your office discuss it?
"A. I think that two of them did. I discussed it with her personally because on amount of the income situation.
"Q. Was that before or after the letter was written, sir; was that before or after the letter was written?
"A. Oh, no, that's before the letter was written.
"Q. And you personally discussed it?
"A. I invited her to come in and explain to me just what her income, her source of income, and how much she was paying for the property, and where was she going to get the money to pay the homestead, her insurance and the taxes.

*493 "Q. What income were you informed she had?
"A. I don't recall the exact amount, but I think she said something about $60.00 a week.
"Q. Well, did you have a written application which would set all this out, sir?
"A. We probably did, which I don't recall the exactyes, we did have written information. All this was taken down.
"Q. Do you recall the names of the other parties to whom Miss Brewster spoke?
"A. Do I recall
"Q. You mentioned there were two other parties to whom Miss Brewster spoke.
"A. Mr. A. James Nelson, my assistant, I think he took down some of the information.
"Q. Do you have the Homestead's file with you which may contain this information?
"A. No, sir, I do not, because that was a declined loan, and probably went up in our records, in our record room. I don't know if we even have it at present.
"Q. But you all do keep records?
"A. We do keep records, but usually not of those that are declined.

* * * * * *
"Q. I see. It's your custom to take a written application for a loan?
"A. We definitely take written applications for all loans."
The record shows that subsequent to the testimony of Mr. Bennecke, the case was continued in order to permit counsel to subpoena the application made by plaintiff to Eureka Homestead Society and to subpoena A. James Nelson, assistant secretary of the homestead to testify. Mr. Nelson wrote the court (and by consent of counsel his letter is in evidence) that he knew nothing about the case except hearsay. No written application from plaintiff was ever produced.
Plaintiff when asked if she had made a written application for a loan with Eureka Homestead Society, testified that she did not sign the document but on June 23, 1960, Mr. Bennecke "had written down the figures and called the Appraisal Board to verify the appraisal," and on the same day rejected the loan. She explained the reason for the July 25, 1960, letter from Mr. Bennecke which refused the loan was written because her counsel, Mr. Rosenberg, requested something in writing from the homestead. From the record there is no error in the trial judge's characterization of plaintiff's application for a loan from Eureka Homestead Society as being merely verbal; and, as the trial judge noted, since Mr. Rosenberg was not called to testify, this is the only application by plaintiff for a loan disclosed by the record.
We do not feel that this single application for a loan was a good faith attempt or reasonable compliance with the terms of the agreement so as to enable plaintiff to avoid the contract and recovery of her deposit. Not only is it true that the plaintiff did not make a bona fide attempt to secure adequate financing under the terms of the agreement but she refused, as the record indicates, to cooperate with the defendants in their offers to secure the loan for her as provided by the agreement between the parties. Plaintiff cites two cases in support of her position, both of which are factually distinguishable from the instant case. In the first of these, Savich v. Ruiz, La.App., 32 So.2d 415, the court states that the purchaser's uncontradicted testimony was that he had contacted several *494 lending institutions and was unable to obtain the necessary loan on the property. An application to at least one building and loan association was made and denied because regulations of local homesteads prohibit granting of loans over 80% of the appraised value of any property. The appraised value of the property in that case was $4,750.00; the property was being sold for $6,200.00; and the purchaser had contracted to pay $2,200.00 in cash and borrow the balance of $4,000.00 from a homestead or other lending institution. The court held where a contract for sale of realty was conditioned upon the purchaser's ability to borrow on the property as surety the sum of $4,000.00 and a loan in that amount could not be procured with only the property as security, but in addition thereto a pledge of the stock of the lending institution was required, the contract was rendered unenforceable and the purchaser did not forfeit his deposit. In the case at bar we find plaintiff making a single verbal application to only one homestead, Eureka Homestead Society; another homestead, The Jackson Homestead Association, was apparently ready, willing and able to make the loan if plaintiff had just made a written application to them. The defendant, James Russell, testified that he was prepared to lend the money to plaintiff himself if he could have gotten her to make an application for a loan, stating "* * * I would have loaned $11,000.00 to a monkey on, (it) because if he didn't pay it I would have come out." Pages 70 and 71 of the record.
Antonini v. Thrifty-Nifty Homes, La. App., 76 So.2d 564, was a suit by a purchaser of realty to recover his deposit under an agreement of sale providing that such deposit would be refunded should the purchaser be unable to borrow part of the purchase price within 30 days by mortgage loans using the property as security. No rate of interest was stated in the agreement. The court held that the agreement contemplated a loan on the usual and customary terms to be repaid over a period of years, and purchaser was not obligated to accept vendor's offer of a loan at 8% interest and repayment in a year and a half. In that case plaintiff actually made an application, which was denied, to at least one homestead. The court there noted that plaintiff did not purchase the property because of the lack of funds due to his inability to properly finance the deal, and that there was convincing evidence that a loan in a sufficient amount was not procurable. In the instant case, a loan in the amount required under the agreement of sale was available.
Plaintiff also complains that the condition in the agreement of sale did not specify the rate of interest, and for that further reason, the contract is defective. The court in the Antonini case, supra, cited as authority for its determination Johnson v. Graham, La.App., 35 So.2d 278, where a condition similar to the one herein not only did not specify the interest rate, but also did not stipulate the time within which the loan must be secured. Judge Kennon, as organ of the court, held that a fair interpretation of the contract was that the contract would be enforceable provided the necessary loan could be obtained on the usual terms and conditions and within a reasonable time. Thus, under the Antonini and Johnson cases, supra, plaintiff's contention is without merit. The fact remains, moreover, that plaintiff did not make a bona fide effort to secure a loan at the then conventional interest rate, nor did she cooperate with the seller and agent in making any such effort. Under these circumstances, the court is of the opinion that plaintiff cannot be heard to complain about the absence of a stipulation regarding the rate of interest.
For the reasons assigned, the judgment of the district court is affirmed, and plaintiff shall pay all costs of appeal.
Affirmed.