321 So.2d 802 (1975)
Label A. KATZ
v.
Paul CHATELAIN.
No. 7071.
Court of Appeal of Louisiana, Fourth Circuit.
November 11, 1975.
*803 Herman & Herman, Maury A. Herman, New Orleans, for plaintiff-appellant.
Reed, Reed & D'Antonio, Guy J. D'Antonio, II, Metairie, for defendant-appellee.
Before SAMUEL, LEMMON and MORIAL, JJ.
MORIAL, Judge.
Plaintiff filed this suit against defendant seeking the forfeiture of a $1,500.00 deposit plus reasonable attorney's fees, interest and costs. The deposit represented part of the $29,750.00 purchase price for certain real property which defendant had agreed to buy. Defendant filed an answer and reconventional demand in which he prayed for the return of double the deposit, the return of which he had demanded prior to plaintiff's filing suit, plus attorney's fees, interest and costs. After trial the district court dismissed plaintiff's suit and rendered judgment in favor of defendant-plaintiff in reconvention in the amount of $1,500.00 plus interest, costs and attorney's fees of $300.00.
Plaintiff asserts in this appeal that: (1) Defendant-plaintiff in reconvention breached the agreement to purchase because a single application to one homestead for a loan is not a good faith effort, under the law, to obtain the financing as stipulated in the agreement to purchase; and (2) when the court determined that both purchaser and seller were in good faith, the award of attorney's fees in favor of the purchaser, defendant-plaintiff in reconvention was improper.
The agreement of sale was entered into on June 25, 1973 on the Real Estate Board of New Orleans, Inc., Standard Form Agreement to Purchase or Sell. Included in the agreement were the following suspensive conditions:
"9. A. Of the six thousand dollars cash the vendor agrees to carry a second mortgage in the amount of $3,000.00 for one year with eleven equal payments of $23.16 (as if the loan was 8% for 25 years) with the entire principal balance due no later than one year from date of act of sale. The balance of $23,750.00 to be financed by a Homestead Loan based on 80% of CAB. However, in the event the CAB appraisal is less than $29,687.50 vendor agrees to carry a second mortgage in excess of the $3,000.00 stated above in an additional amount equal to the amount that the Homestead Loan is less than $23,750.00, on the same terms and conditions as the $3,000.00; eleven equal payments as if the loan was at 8% interest for 25 years ($7.72 per month per $1,000.00) with the entire principal balance due no later than one year from date of act of sale. The second mortgage will have no penalty for prepayment and will be assumable upon written permission of the holder of said note, permission not to be unreasonably withheld.
* * * * * *
"Should purchaser, seller or agent be unable to obtain the loan stipulated above within 30 days from acceptance hereof, this contract shall be null and void and the agent is hereby authorized to return the purchaser's deposit in full. * * *"
Did defendant's failure to contemporaneously apply for a loan from more than one *804 homestead within the thirty (30) day period evidence a lack of good faith? We think not.
Plaintiff cites Brewster v. Yockey, 153 So.2d 489 (La.App. 4 Cir.1963) to support this argument that defendant's single application lacks the requisite good faith required under the law. In Brewster, supra, the purchaser's single verbal application to one homestead was held not to be a bona fide attempt to secure financing. The record there clearly showed that another homestead was apparently ready, willing and able to make a loan if the purchaser had made a written application to it. Brewster is inapposite to the facts of theease at bar.
The evidence is that on June 25, 1973 defendant applied to Dixie Homestead Association in New Orleans for a loan of $23,800.00 at 8¼ percent plus a one percent origination fee. He applied to no other homestead. Dixie ordered an appraisal of the property by the Central Appraisal Bureau (CAB) on June 29, 1973. The CAB's appraisement in the amount of $20,500.00 was received by Dixie on July 18, 1973. About this date a representative of Dixie informed defendant via telephone of the CAB appraisal. Defendant then told plaintiff of the CAB valuation. Dixie's loan committee met on July 24, 1973 and rejected defendant's loan application "* * * due to the condition of the property * * *." Defendant was so notified of the reason for Dixie's declination to make a loan via letter dated August 1, 1973.
Plaintiff testified that several attempts were made to contact defendant via telephone after defendant notified him of the appraisal. He stated that the purpose of his efforts to reach the defendant was because "* * * we could obtain a loan, * * *." On the evening of the thirtieth day, plaintiff delivered to defendant's residence a letter which in pertinent part stated, "* * * that the vendor is prepared to finance this sum, $26,750.00 on the terms and conditions * * * namely, $206.46 per month for eleven equal monthly payments beginning one month from the date of the act of sale, including principal and interest, with the entire remaining principal balance due not later than one year from the date of the act of [s]Sale. * * *"
The suspensive condition imposed an inescapable duty upon the defendant to make a good faith application for the type of loan described. Morrison v. Mioton, 163 La. 1065, 113 So. 456 (1927); Williams v. Cormier, 100 So.2d 307 (La.App. 1 Cir.1958). Defendant did exactly what the law requires of him. He promptly made a bona fide application to Dixie Homestead for the type of loan described in the agreement. He had no obligation to apply elsewhere while his application for the type of loan stipulated was pending.
Though defendant was timely informed of a CAB appraisal that would not permit a homestead to loan the amount for which he had applied, nevertheless, the appraisal would have allowed a loan in an amount less than that applied for and accordingly would have fulfilled the suspensive condition. Defendant's loan, however, was not declined because the appraisement was insufficient to make a loan.[1] Defendant simply was unable to procure a loan within the thirty (30) day period from the homestead to which he had made a good faith application.
True, plaintiff testified that "we could obtain a loan." Although plaintiff had procured the same CAB appraisement from another homestead, the record fails to show from which homestead plaintiff could have timely obtained a loan for the defendant. Defendant was not obligated to accept a loan from the plaintiff on terms and conditions inconsistent with usual and *805 customary terms to be found in a "homestead loan." The terms of the loan offered by plaintiff were not of the type of loan which was within contemplation of theparties when the agreement was made. Antonini v. Thrifty Nifty Homes, 76 So.2d 564(La.App.Orl.1955).
The provision of the agreement pertaining to attorney's fees provides:
"Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay * * * reasonable attorney's fees and costs incurred by the other party * * * in enforcing their respective rights."
Upon defendant's failure to obtain the loan stipulated within the time period allowed, the agreement by its terms became null and void. Thereupon defendant had a right to the return of his deposit. Plaintiff's refusal to return defendant's deposit was a failure to comply with the plain and clear terms of the agreement for which he must pay reasonable attorney's fees.
For the foregoing reasons the judgment of the district court is affirmed.
Affirmed.
NOTES
[1] The various homesteads operating in New Orleans do not maintain separate real estate committees of" appraisers. Appraisal made by the Central Appraisal Bureau are made use of by all homestead associations. A homestead association will customarily loan as much as 80% of the amount of the appraisal.