852 So.2d 1156 (2003)
Michael David GARSEE, Plaintiff-Appellant,
v.
James Caldwell BOWIE, Defendant-Appellee.
No. 37,444-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2003.
Leblanc & Waddell, Thomas H. Fields, III, Baton Rouge, for Appellant.
Paul Loy Hurd, Monroe, for Appellee.
Before WILLIAMS, GASKINS and TRAYLOR (Pro Tempore), JJ.
GASKINS, J.
The plaintiff, Michael David Garsee, appeals the trial court's grant of summary judgment in favor of the defendant, James Caldwell Bowie, dismissing the plaintiff's suit for specific performance of an agreement to purchase real estate. For the *1157 following reasons, we affirm the trial court judgment.

FACTS
In April 2001, Garsee and Bowie entered into an agreement for the purchase of eight multi-family residential properties in West Monroe. Bowie agreed to buy the properties for a total of $1.2 million in "as is" condition. The agreement to purchase contained the suspensive condition that Bowie obtain a 30-year first mortgage with a 25 percent down payment at a rate not to exceed 6 7/8 percent interest. The sale was to close on two of the buildings by April 28, 2001. The sale on the remainder of the properties was to close by May 1, 2001.
On April 14, 2001, the defendant filed eight separate purchase money loan applications with Hibernia National Bank (Bank), one for each of the units to be purchased. The Bank's interest rate was seven percent and the defendant agreed to pursue the loan at that rate. He then negotiated a loan with another lending institution for the 25 percent down payment and closing costs. The plaintiff contends that the defendant requested that the loan application with the Bank be converted from a 75 percent purchase money financing loan to a 90 percent "refinancing" loan. The plaintiff asserts that the defendant also developed concerns about the roofs as well as the electrical, plumbing, heating, and cooling systems. According to the plaintiff, the defendant attempted to renegotiate an adjustment in the price even though he agreed to purchase the properties "as is."
During this period of time, the parties agreed to extend the closing dates to May 20, 2001. The defendant expended approximately $178,000 to pay off mortgages on two of the properties in order to prevent the accrual of interest payments for the month of May 2001.
In early May, the defendant was informed by the Bank that the loan had been denied. At that point, the defendant declared the purchase agreement null and void and refused to carry through with the sale. The plaintiff contends that only the 90 percent refinancing loan was declined and not a loan for 75 percent of the purchase price, as specified in the agreement to purchase.
The plaintiff filed suit on May 23, 2001 for specific performance and damages. He claimed that the defendant did not make a good faith effort to obtain financing, causing the loan to be denied due to the defendant's own fault. The defendant filed an answer and reconventional demand claiming that the properties were not placed in the required condition. The defendant also alleged that the agreement to purchase failed by its own terms when he was not able to obtain the financing as set forth in the agreement.
Additionally, the defendant claimed that a second agreement was entered by the parties on April 30, 2001 whereby the defendant paid $178,400.54 on two of the properties to pay off the existing mortgages in order to avoid the accrual of interest for the month of May 2001. The defendant asserted that the plaintiff was required to reimburse him for this expenditure. The defendant also urged that the agreement granted him the right to purchase the two properties for $150,000 each.
On February 25, 2002, the defendant filed a motion for partial summary judgment. He argued that the purchase agreement failed when he could not obtain financing as specified in that document. Therefore, he sought dismissal of the plaintiff's suit for specific performance and for damages for the breach of the agreement *1158 to purchase. The defendant also sought enforcement of the second agreement with the plaintiff, allowing him to purchase two of the properties. The defendant further asserted that he was entitled to recover the $178,400.54 spent to pay off the mortgages on those two properties.
On August 13, 2002, the trial court entered summary judgment in favor of the defendant. The court found that the agreement to purchase failed by virtue of the defendant's inability to obtain financing. Therefore, the plaintiff's claims for specific performance of the agreement to purchase and to collect damages for breach of the agreement were dismissed. The court found that the plaintiff was obligated to reimburse the defendant for the $178,400.54 he spent to pay off the mortgages on two of the properties and specified that the defendant had the right to purchase the two tracts pursuant to the terms of the April 30, 2001 agreement with the plaintiff. The court ordered that the plaintiff pay the judgment within 30 days or be subject to contempt of court.[1]
The plaintiff filed a motion and order for a new hearing on August 22, 2002, arguing that the reasons for judgment only dealt with the plaintiff's obligation to reimburse the defendant for the amount expended to pay off the mortgages on two of the properties, whereas the judgment covered all relief sought by the defendant. On November 26, 2002, the trial court denied the plaintiff's motion to reconsider. The plaintiff appealed.

SUMMARY JUDGMENT
The plaintiff claims that the trial court erred in granting summary judgment in favor of the defendant where genuine issues of material fact exist regarding the defendant's good faith, motive, and intent in this real estate transaction. The plaintiff argues that summary judgment is never appropriate where such issues are present. According to the plaintiff, there are issues of material fact as to whether the defendant made a good faith effort to obtain a loan in compliance with the requirements of the purchase agreement. The plaintiff insists that the defendant converted the applications for a purchase money loan to applications for a loan to refinance. He also maintains that the circumstances surrounding the conversion of the loan terms are highly disputed. The plaintiff contends that there is no showing that the loan for purchase money was denied by the Bank before being converted to a refinance loan. The plaintiff insists that the defendant's action in paying off $178,400.54 in mortgages on two of the properties is not indicative of good faith. According to the plaintiff, the defendant signed the purchase agreement to remove the properties from the market while he attempted to negotiate a more favorable price.

Legal Principles
Appellate review of a grant or denial of a motion for summary judgment is de novo. Independent Fire Insurance Company v. Sunbeam Corporation, 1999-2181 (La.2/29/00), 755 So.2d 226. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment is designed to secure the just, speedy, and inexpensive determination *1159 of every action except those disallowed by La. C.C.P. art. 969. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Independent Fire Insurance Company v. Sunbeam Corporation, supra.
A fact is "material" when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success or determine the outcome of the legal dispute. King v. Career Training Specialists, Inc., 35,050 (La.App.2d Cir.9/26/01), 795 So.2d 1223.
The mover has the burden of establishing the absence of material fact. If the mover will not bear the burden of proof at trial on the matter, then he is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. La. C.C.P. art. 966(C)(2).
Once the mover makes a prima facie showing that there is no genuine issue of material fact, the opponent must produce factual support to avert the summary judgment. Speculation that a jury might not believe the mover's witness is not grounds to deny a summary judgment. Whether a particular fact in dispute is material can be assessed only in light of the substantive law applicable to the case. Allen v. State Farm Fire and Casualty Company, 36,377 (La.App.2d Cir.9/18/02), 828 So.2d 190, writ denied, 2002-2577 (La.12/19/02), 833 So.2d 343.
The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden of proof at trial. If he does not produce such evidence, then there is no genuine issue of material fact and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Johnson v. Entergy Corporation, 36,323 (La.App.2d Cir.9/20/02), 827 So.2d 1234.
The court should draw those inferences from the undisputed facts which are most favorable to the party opposing the motion for summary judgment since summary judgments deprive the litigants of the opportunity to present their evidence to a jury and should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. Johnson v. Entergy Corporation, supra; Independent Fire Insurance Company v. Sunbeam Corporation, supra; King v. Career Training Specialists, Inc., supra.
Our summary judgment jurisprudence sets forth the principle that weighing evidence and making credibility determinations have no place in the summary judgment procedure. Campbell v. Hospital Service District No. 1 Caldwell Parish, 35,015 (La.App.2d Cir.8/22/01), 793 So.2d 521; Row v. Pierremont Plaza L.L.C., 35,796 (La.App.2d Cir.4/3/02), 814 So.2d 124, writ denied, XXXX-XXXX (La.8/30/02), 823 So.2d 952. See also Johnson v. Entergy Corporation, supra; Independent Fire Insurance Company v. Sunbeam Corporation, supra; Wiltheis v. Pennington, 35,872 (La.App.2d Cir.4/3/02), 813 So.2d 1209. In deciding a motion for summary judgment, the court must assume that all of the affiants are credible. King v. Career Training Specialists, Inc., supra.

Discussion
In support of his motion for summary judgment, the defendant attached the adverse action letters from the Bank showing that the eight loan applications were denied due to debt ratio level. However, the letters did not specify whether the loan denied was for purchase money or for refinancing.
*1160 The defendant attached his own affidavit to his motion for summary judgment, stating that his offer to purchase was accepted by the plaintiff on April 9, 2001. The next day, he contacted Patricia Sims with the Bank and set up an appointment to apply for a loan in accordance with the terms of the purchase agreement. He said that he never signed a loan application for a refinance loan. He stated that on May 5, 2001, he received a message on his answering machine that his loan applications had been declined by the Bank. The adverse action letters from the Bank, reflecting that the loan had been refused, arrived on May 14, 2001.
The record also includes the defendant's deposition in which he claims that he did not inquire with the Bank about making any other type of loan other than one in accordance with the terms of the purchase agreement.
The record contains the affidavit of Patricia Sims, the loan officer at the Bank who handled the defendant's loan applications. She said that he applied for a purchase money loan for 75 percent of the value of the properties, he cooperated with efforts to secure a loan, and he did not request that the terms of the loan be changed from a purchase money loan to a refinance loan. Ms. Sims stated that it became apparent internally that the purchase money loan would be declined. The defendant and Charles Joseph, a real estate agent handling the transaction, then communicated with Ms. Sims about alternative underwriting as a refinance loan, believing that the Bank could use the higher valued appraisals on the property held by the plaintiff. She said that this was discussed only as an alternative and that the defendant never signed an application for a refinance loan. Ms. Sims averred that the Bank evaluated the loan as a refinance only after it became apparent that the purchase money loan would be declined.
Ms. Sims' deposition is also included in the record. She said that the defendant's loan applications for purchase money, as originally submitted, were declined by the Bank. According to Ms. Sims, the loan the defendant obtained from another lending institution for the down payment in this transaction made his debt-to-loan ratio unacceptable. Ms. Sims stated that the decision to decline the loan was made by the underwriting department of the Bank.
The record contains a deposition by Charles Joseph, the real estate agent who handled the transaction. He said that he was initially informed by Ms. Sims that the purchase money loan had been conditionally approved by the Bank. A representative of the Bank later told him that the request for refinancing had been declined. Mr. Joseph was also informed that the defendant instructed Bank personnel not to discuss the specifics of the loan underwriting process. Mr. Joseph stated that he suggested to the defendant that he obtain a refinance loan to help with the down payment on the property, but that it had nothing to do with the obligation under the purchase contract.
A deposition by Timothy Colvin of Community Trust outlined the specifics of the loan received by the defendant for the down payment on the properties at issue in this case.
The documents filed into the record in connection with the motion for summary judgment include the loan applications. These documents show that the defendant applied for a purchase money loan in accordance with the terms of the purchase agreement. Although the Bank apparently considered a refinance loan when it became apparent that the purchase money loan would be refused, there is no signed *1161 application by the defendant for such a loan.
In this case, the parties agreed upon financing terms for this transaction and set them forth in the purchase agreement. That document also specified that the defendant's ability to obtain financing according to those terms was a suspensive condition of the sale. A contract to sell which is contingent upon the obtaining of financing is a contract subject to a suspensive condition. This contract does not become effective until the condition occurs. La. C.C. art. 1767; Shepard v. Calloway, 441 So.2d 488 (La.App. 2d Cir.1983).
When a purchaser, through no fault of his own, is unable to obtain the loan as provided for in the purchase agreement, he may invoke an available provision in the contract conditioning the entire agreement on his ability to make said loan, and declare the contract null and void. Century 21 Acadia Realty and Development Company, Inc. v. Brough, 393 So.2d 287 (La. App. 1st Cir.1980).
The record shows that the defendant applied for financing in accordance with the terms of the purchase agreement and the Bank was not willing to make a purchase money loan to the defendant. The Bank then considered whether the defendant might qualify for a refinancing loan. However, the defendant also failed to qualify for this type loan. The plaintiff claims that the statements made by Ms. Sims are inconsistent on this point. However, she clearly stated that during the underwriting process, it became apparent that the Bank would not grant the purchase money loan to the defendant and then the Bank considered alternate financing terms.
The defendant has shown that he made the required effort to obtain financing in accordance with the purchase agreement and that he was not able to do so. Therefore, as a matter of law, the suspensive condition was not fulfilled and the purchase agreement failed. The plaintiff makes allegations that the defendant was in bad faith. However, the plaintiff has simply failed to show that the defendant did not comply with the terms of the purchase agreement. Under these circumstances, the trial court did not err in granting summary judgment in favor of the defendant.
The plaintiff also urges that the defendant failed to satisfy his obligation to make a good faith effort to obtain a loan in compliance with the terms of the purchase agreement because he only made an application with one lending institution. The plaintiff relies upon Brewster v. Yockey, 153 So.2d 489 (La.App. 4th Cir.1963), in support of his argument. The facts of Brewster are distinguishable from those in the present matter.
In Brewster, a buyer and seller entered into a purchase contract conditioned upon the buyer obtaining a homestead or conventional loan for a fixed amount for 20 or 25 years. The buyer then made only a verbal application for a loan to one lending institution.
The court held that a single verbal application for a loan was not a good faith attempt or reasonable compliance with the terms of the agreement so as to enable the buyer to avoid the contract and recover her deposit. There was also evidence at the trial on the merits that another lending institution would have lent money to the buyer if she had made a written application.
Numerous other cases have held that the buyer need only make one good faith effort to fulfill the condition of securing financing. The jurisprudence does not support the plaintiff's contention that a buyer must make loan applications with numerous lending institutions. See Weger *1162 v. Silveria, 460 So.2d 49 (La.App. 1st Cir. 1984); Century 21 Acadia Realty and Development Company, Inc. v. Brough, supra; Woods v. Austin, 347 So.2d 897 (La.App. 3d Cir.1977); Merrill Lynch Realty, Inc. v. Williams, 526 So.2d 380 (La. App. 4th Cir.1988); Bellina v. Graybar, 532 So.2d 847 (La.App. 4th Cir.1988); Katz v. Chatelain, 321 So.2d 802 (La.App. 4th Cir.1975); Thaly v. Namer, 496 So.2d 1211 (La.App. 5th Cir.1986).
The defendant has shown that he unsuccessfully attempted to obtain financing in accordance with the terms of the agreement. The jurisprudence specifies that one valid effort to obtain a loan is sufficient. The trial court was able to make a determination that the suspensive condition in this matter was not fulfilled, thereby voiding the purchase agreement, without having to resort to credibility determinations and the weighing of evidence. The plaintiff did not produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial; consequently, the trial court did not err in granting summary judgment in favor of the defendant.

CONCLUSION
For the reasons stated above, we affirm the ruling of the trial court, granting summary judgment in favor of the defendant, James Caldwell Bowie, and dismissing the demands of the plaintiff, Michael David Garsee. Costs in this court are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] Although the defendant's motion was for partial summary judgment, as observed by the trial court, the grant of the motion dispensed with all issues in the suit. The plaintiff did not appeal the $178,400.54 judgment in favor of the defendant.