STEWART, J.
| ,This court granted a writ application by defendant, J & J Industrial Supply & Fasteners, L.L.C. (“J & J”), to review the trial court’s denial of its motion for summary judgment. Finding there to be no genuine issue of material fact and that J & J is entitled to judgment as a matter of law, we reverse the trial court’s judgment and render summary judgment in favor of J & J, dismissing the claims asserted against J & J by the plaintiff, Christy Dupree (“Dupree”).
FACTS
While an employee of a Super 1 Foods (“Super 1”), a division of Brookshire’s Gro- *778 eery Company, in Shreveport on August 11, 2011, Dupree was injured when the door of a large safe fell from its hinges and landed on her feet, pinning them to the floor. Pleadings indicate that the safe was a Diebold safe and that the door weighed in excess of 400 pounds. Dupree’s injuries required her to have multiple surgeries, and she continues to need medical treatment for the residual pain.
On January 24, 2012, Dupree filed suit against Lock Doc of Louisiana, Inc. (“Lock Doc”), whose employee, Benjamin Moore (“Moore”), had replaced the hinge pins in the door of the safe on July 12, 2011. Dupree amended her petition on May 10, 2012, to add J & J as a defendant. She alleged that J & J provided defective or improper pins to Moore, who claimed that he purchased the replacement pins from J & J.
After written discovery and 11 depositions, J & J filed a motion for summary judgment on May 3, 2013. J & J asserted that there was no evidence that the pins used by Moore to repair the safe were defective, as |2the pins had never been examined and were no longer in existence. J & J also argued that, other than Moore’s assertion that he purchased the pins from J & J, there was no evidence that it even sold the pins. Finally, J & J asserted, that even if Moore purchased the pins from it, as a non-manufacturing seller, J & J could not be held liable under the Louisiana Products Liability Act (“LPLA”), La. R.S. 9:2800.51 et seq. J & J asserted that there was no evidence that the pins were defective, that it knew or should have known of any defect prior to the sale, or that it failed to disclose the defect.
In support of its motion for summary judgment, J & J offered excerpts from the depositions of Moore and Lock Doc’s owner / manager, James Horton (“Horton”). Moore’s deposition indicates that prior to his replacement of the hinge pins, the door was dragging on the bottom of the safe making it difficult for the Super 1 employees to open and close it. Moore determined that the hinge pins on the door of the safe were worn. He stated that “Tim,” presumably another Lock Doc employee, knocked out the old pins. Moore then took the old, worn pins to J & J, where he claims he had previously bought pins earlier that year to repair a safe at another Brookshire’s store in Haughton. Moore stated that the first time he went to J & J for the Haughton job, he told the person working at the counter what he was working on and that the pins were worn out. The guy working at the store brought out two pins that exactly matched the old ones. Moore stated that both safes appeared to be the same, so he again returned to J & J for pins to repair the Super 1 safe in July. Moore testified that he told the ^person working the counter at J & J that he needed pins for a safe door hinge; however, he provided no other information regarding the safe, such as its model or any specifications for parts. Moore testified that the J & J employee stated that J & J carried pins and brought out pins that looked exactly like the ones removed from the safe, only new and unworn. Moore explained that he determined the pins were the same based on their size, dimension, and weight. He described the pins as being steel alloy pins with a black coating.
Moore stated that after he placed the new pins in the safe door, the door could be easily opened and closed using two fingers. He believed that the accident occurred because the employees, who had become accustomed to having to use force to open and close the heavy door, continued to use too much force and that this eventually weakened and fractured the new pins. He believed that if the pins had *779 not been strong enough, they would have “sheared instantly,” rather than a mpnth later. After Dupree’s accident, Lock Doc again repaired the safe. Moore’s deposition indicates that he again obtained pins from J & J to use to secure the door to the safe after the accident.
Horton stated that Lock Doc was called to repair the safe because the door was dragging and hard to close. Moore told him that he purchased the pins used to repair the safe from J & J, but Moore did not provide any receipt or invoice for the purchase. Horton recalled that he had been to J & J with Moore on one occasion. After Dupree’s accident, another employee of Lock Doc tapped out the broken pins. Horton described the pins as 14dowel pins that are flat on the top and bottom. He did not know the exact size of the pins removed from the safe. Horton stated that an employee would generally use measurements to describe what is needed when purchasing pins from a supplier, such as J & J.
Lock Doc opposed J & J’s motion. Lock Doc asserted that what caused the safe door to fall off its hinges had not yet been determined. Arguing that discovery was not yet complete, Lock Doc asserted that only J & J could supply information on the manufacturer and type of pins purchased by Moore and that it needed to examine the hinge pins for comparison against those sold by J & J. Lock Doc also asserted that the lack of any documentation of Moore’s purchase of the pins from J & J and Moore’s testimony regarding his purchase created a genuine issue of material fact and required a credibility determination by the trial court, making the matter inappropriate for disposition by summary judgment.
In support of its opposition, Lock Doc also relied on excerpts from the depositions of Moore, Horton, and Eddie Crawford, presumably a Brookshire’s employee. Moore stated in his deposition that he did not know J & J had pins until he went there the first time for the repair of the safe at the store in Haughton. At that time, J & J’s employee said they carried pins, but did not specify whether they carried pins for safe doors. The employee provided a pin that looked exactly the same as the one taken from the safe. With regard to the July repair and his purchase from J & J, Moore could not recall the name of the person he dealt with at J & J, and he did not recall getting a receipt. His deposition indicates that an invoice for the July repair |,dob was generated and referred to hinge pins costing a couple of bucks, but the repair invoice contained no information on where the pins were purchased. Moreover, the repair invoice was never remitted to Brook-shire’s for payment.
Horton stated in his deposition that the pins likely cost a couple of dollars and that because he does not use receipts for such purchases to invoice clients, he does not require receipts from his employees. Crawford’s deposition excerpt was offered to show that the safe, a Diebold model, was then in a warehouse in Tyler, Texas, where it could be inspected.
In response to Lock Doc’s opposition, J & J replied that it had already provided its vendor list for the pins it sold along with contact information for manufacturers of safes. Even if it sold the pins as claimed by Moore, neither Dupree nor Lock Doc would be able to produce evidence sufficient to find liability on the part of a good-faith seller. Thus, J & J asserted that none of the arguments put forth by Lock Doc should preclude summary judgment in its favor.
On July 17, 2013, the trial court heard arguments on J & J’s motion, but continued the matter for additional discovery. *780 In a supplemental opposition to J & J’s motion, Lock Doc argued that there was a genuine issue of material fact as to whether J & J sold Moore the wrong type of pin. Lock Dock supported its opposition with excerpts from the deposition of Michael Dean Roach (“Roach”), a representative of J & J. Roach explained how J & J tracks sales of all pins by keying in the part number at the time of Rsale. He explained that J & J stocks four types of pins, namely, roll pins, dowel pins, clevis pins, and cotter pins. He noted that roll pins and dowel pins are similar. He also testified that some pins are kept in trays and some in individual boxes. Roach did a search of cash sales during the period around the time of the July repair. He indicated that several pins were sold then, but he did not seem to believe that they were the type of pins at issue. However, Roach testified that he knows nothing about safes.
In its final argument in support of its motion for summary judgment, J & J noted that there had been no additional discovery since the trial court’s continuance of the hearing on its motion. Referring to Horton’s deposition, J & J noted that Lock Doc had possession of the pins after Du-pree’s accident but that it no longer had the pins and could not produce them for inspection.
The trial court again took up J & J’s motion on October 28, 2013. After arguments by the parties, the trial court rendered judgment in open court denying J & J’s motion. The trial court did not find there to be an issue of credibility, but it did find unspecified genuine issues of material fact based on the deposition excerpts offered to the court.'
Following a written judgment signed on November 13, 2013, J & J applied for supervisory review of the trial court’s ruling. On January 23, 2014, this court granted J & J’s writ and ordered that the matter be submitted for a decision on the court’s docket.
^DISCUSSION
Summary judgment is appropriate when, upon consideration of the pleadings and adequate discovery, there is no genuine issue as to material fact, and the mov-ant is entitled to judgment as a matter of law. La. C.C.P. art. 966; Garsee v. Bowie, 37,444 (La.App.2d Cir.8/20/03), 852 So.2d 1156. A material fact is one whose existence or nonexistence is essential to the cause of action because it determines the outcome. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002; Garsee, supra. A “genuine issue” exists where reasonable persons, after considering the evidence, could disagree. Suire v. Lafayette City-Parish Consol. Gov., 2004-1459 (La.4/12/05), 907 So.2d 37.
Summary judgment rulings are subject to a de novo review by the appellate court using the same criteria that govern the district court’s consideration of whether summary judgment is proper. Id.; Haley v. Wellington Specialty Ins. Co., 44,014 (La.App.2d Cir.2/25/09), 4 So.3d 307, writ denied, 2009-0532 (La.4/17/09), 6 So.3d 800. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).
The party who moves for summary judgment has the burden of proof. La. C.C.P. art. 966(C)(2). However, if the moving party will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, the moving party is not required to negate all essential |8elements of the adverse party’s claim but is merely required *781 to point out that there is an absence of factual support for one or more elements essential to the claim. Id. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id.
As provided by La. C.C.P. art. 967(B), the adverse party may not rest on the mere allegations or denials of his pleading in response to a properly made and supported motion for summary judgment. Rather, he must set forth, by affidavits or as otherwise provided by the law governing the summary judgment procedure, specific facts showing there is a genuine issue for trial. If he fails to do so, summary judgment shall be rendered against him if appropriate. La. C.C.P. art. 967(B).
In considering a motion for summary judgment, a court may not make credibility determinations or weigh conflicting evidence. Brooks v. Minnieweather, 44,624 (La.App.2d Cir.8/19/09), 16 So.3d 1244. The court is required to assume that all affiants are credible. Id. Ordinarily, cases that present a question of negligence are not appropriate for summary judgment, unless reasonable minds could not differ. Freeman v. Teague, 37,932 (La.App.2d Cir.12/10/03), 862 So.2d 371. However, summary judgment is appropriate when there are no material facts at issue and no legal duty exists. Bradford v. Kaster, 98-0758 (La.App.1st Cir.05/14/99), 732 So.2d 827, writ denied, 99-1612 (La.09/17/99), 747 So.2d 567.
J & J argues that the there are no genuine issues of material fact in dispute regarding the claim against it and that the trial court erred in|ndenying its motion for summary judgment. J & J asserts that it cannot be held liable under the LPLA because it is not a manufacturer of the pins it sells. More importantly, it does not hold itself out as a manufacturer or seller of parts for safes. J & J contends that if it sold the pins, as asserted by Moore, it cannot be held liable as a nonmanufactur-ing good-faith seller. It knew of no defect in the pins and had no duty to inspect the pins for hidden defects. Finally, J & J contends that neither Lock Doc nor Du-pree will be able to prove that the pins used by Moore were defective because Lock Doc had possession of the pins after repairing the safe following the accident and is not able to produce them for inspection.
Lock Doc argues that the trial court did not err in denying J & J’s motion for summary judgment because genuine issues of material fact remain. Lock Doc asserts there is conflicting evidence regarding whether Moore purchased the hinge pins from J & J and that this requires the court to assess Moore’s credibility. Trying to sidestep application of the LPLA, Lock Doc also asserts there is a genuine issue of material fact regarding whether J & J sold the wrong type of pin to Moore and that this theory arises out of the general negligence laws.
For purposes of the motion for summary judgment, we cannot assess Moore’s credibility. Nothing in the record either refutes or supports his claim that he purchased the hinge pins from J & J. Moore’s deposition testimony regarding his purchase of the pins is merely an assertion without any supporting evidence. Neither Moore nor Lock Doc produced any receipt or other documentation evidencing the purchase from J & J. And | inwhile Roach’s testimony indicates that J & J did have some cash sales of pins around the time of the July repair, no specific sale has been traced to Lock Doc or Moore. We do not find that Moore’s testimony regarding his purchase of the pins at J & J creates a genuine issue of material fact for trial.
*782 Even assuming that Moore did purchase the pins at J & J as he stated in his deposition, the depositions offered in support of and in opposition to summary judgment do not establish a genuine issue of material fact as to whether J & J sold the wrong type of pin to Moore. The evidence shows that J & J does not hold itself out as a supplier of parts for safes. Roach testified about the four types of pins stocked by J & J, but he did not claim that any of these pins are to be used particularly for the repair of safes. According to Roach, his search of cash sales during the period of the safe repair showed that several pins were sold. Though Roach did not believe any of them to be the type in question, he stated that he does not know anything about safes.
As explained by Moore in his deposition, he brought the old pins to J & J, and the store clerk, whom he could not identify, provided him with pins that exactly matched the worn ones. Moore, the locksmith, was adamant in his deposition that the pins purchased at J & J were exactly like the pins removed from the safe. He testified that the pins fit and did not have to be modified in any way. He stated that they went into the hinges the same way the originals came out. Prior to purchasing the new pins, Moore did not look up the model of the safe or any specifications for parts. He did not ask anyone at J & J to do so, and he stated that no one at J & J said that they | n carried pins specifically for safe doors. Nothing in the depositions indicated that Moore informed the clerk at J & J about the size of safe he was repairing.
Moore was the locksmith in charge of repairing the safe. Therefore, he had the duty of ensuring that the appropriate pins were used to repair the safe. J & J was not hired by Super 1 / Brookshire’s to repair the safe or supply parts. J & J did not hold itself out as a supplier of parts for safes, and it had no information on specifications for the hinge pins used in the safe. J & J merely sold pins to Moore that, according to Moore, exactly matched those removed from the safe.
Moreover, Lock Doc had possession of the broken pins after the accident and apparently lost them. Thus, it cannot compare the broken pins with pins sold by J & J. From our review of this record we find that J & J met its burden of pointing out an absence of factual support for the claim that it sold the wrong type of pin. The deposition of Lock Doc’s own employee, Moore, refutes Lock Doc’s claim. We also find that Lock Doc has failed to produce factual support that it will be able to meet its evidentiary burden at trial on the issue of whether J & J sold Moore the wrong type of pin.
Additionally, we find summary judgment in favor of J & J appropriate under the theory that it was a non-manufacturing seller in good faith.
A nonmanufacturing seller of an allegedly defective product is not liable in tort absent a showing that he knew or should have known of the defect in the product and failed to declare it. Jackson v. Sears Authorized Retail Dealer Store, 36,166 (La.App.2d Cir.06/12/02), 821 So.2d 590. Moreover, a nonmanufaeturing seller is not required to inspect the product prior to the sale to determine the possibility of any inherent vices or defects. Id.
The record establishes that J & J is not a manufacturer of pins. It merely sells them. There is no evidence of any defect in the pins sold by J & J to Moore. Moore did not believe that the accident happened because the wrong pins or defective pins were used. He opined that the wrong pins would have sheared instantly. Moore did not blame the accident on some defect in the pins. Instead, Moore attributed the *783 accident to Super 1 employees using too much force to open and close the newly repaired door. He explained that this repeated action eventually, and most unfortunately for Dupree, caused the hinge pins on the 400-pound door to give.
Even if some defect existed in the pins sold by J & J to Moore, Lock Doc no longer has the pins available for inspection. Moreover, J & J had no duty to inspect the pins for inherent defects prior to the sale, and there is no evidence that J & J knew or should have known of any defect in the pins.
From our de novo review of this record, we find that the trial court erred in denying J & J’s motion for summary judgment. We find there to be no genuine issue of material fact for trial as to liability on the part of J & J and that J & J is entitled to summary judgment as a matter of law.
| ^CONCLUSION
For the reasons stated in this opinion, we reverse the trial court’s judgment and render summary judgment in favor of J & J, dismissing all claims against it in this matter. Costs are assessed to Lock Doc.
REVERSED and RENDERED.